OPINION

Per Curiam:

In this appeal, we confront an issue of constitutional importance to Nevada: whether businesses in this state are required to pay sales or use tax on meals that they provide free of charge to patrons and employees. Article 10, Section 3(A) of the Nevada Constitution establishes a sales and use tax exemption for most ‘ ‘food for human consumption.’ ’ Appellant contends that complimentary patron and employee meals are exempted under this provision because the uncooked food used to prepare those meals qualified as “food for human consumption” at the time of its initial purchase, and no taxable event occurred thereafter. We agree. Since no taxable event occurred between the time appellant initially purchased the food used to prepare complimentary meals (in a tax-exempt transaction) and the time appellant gave those meals away, the meals were exempt from sales and use taxation under the plain and unambiguous language of the Nevada Constitution.

FACTS AND PROCEDURAL HISTORY

Appellant Sparks Nugget, Inc., owns and operates John Ascuaga’s Nugget, a hotel and casino resort in Sparks, Nevada. Like many hotel and casino resorts, the Nugget operates a number of *162 restaurants on its premises. In order to supply these restaurants, the Nugget purchases large quantities of unprepared food from vendors. Under Nevada law, the Nugget pays no sales or use tax on these initial food purchases.
Following its nontaxable, unprepared food purchases, the Nugget places the food in its inventory. The Nugget later removes the food from its inventory and prepares the food for consumption by resort patrons and employees, distributing the prepared food in one of two ways: the Nugget either sells the prepared food as meals in its restaurants or gives the food away in the form of complimentary meals. When the Nugget sells the food, it collects the applicable sales tax from the purchaser and remits that amount to respondent, the Nevada Department of Taxation (Tax Department). By contrast, the Nugget does not collect sales tax on complimentary meals. Instead, the Nugget is charged use tax on the food used to prepare the meals.
Between April 1999 and February 2002, the period relevant to this appeal, the Nugget paid use tax on the food it used to prepare complimentary patron and employee meals. In May 2002, the Nugget filed a claim with the Tax Department, seeking a refund of that money. In its refund claim, the Nugget argued that the food it purchased and used for complimentary patron and employee meals was not subject to either sales or use tax.
In support of its argument, the Nugget cited three provisions of Nevada law: (1) Article 10, Section 3(A) of the Nevada Constitution; (2) NRS 372.284; and (3) NRS 374.289.[1] Each of these provisions exempts “food for human consumption” from sales and use taxation, subject to certain enumerated exceptions. The Tax Department denied the Nugget’s refund claim, however, citing one of the provisions’ exceptions, which states that the food exemption does not apply to ‘ ‘prepared food intended for immediate consumption.’ ’
Following the denial of its claim, the Nugget administratively appealed the Tax Department’s decision to the tax commission. That appeal proved unsuccessful, however, and having exhausted its administrative remedies, the Nugget then sued the Tax Department in district court, again seeking a refund of the use taxes that it had paid with respect to complimentary patron and employee meals.
In district court, the parties stipulated to the operative facts and filed cross-motions for summary judgment. After considering the motions, the district court granted summary judgment in the Tax Department’s favor, concluding that the food that the Nugget removed from its inventory and served as complimentary meals to *163 patrons and employees was not exempt from taxation.[2] This appeal followed.

DISCUSSION

Standard of review

We review a district court’s order granting summary judgment de novo.[3] Because the parties have stipulated to the operative facts in this case, the only issue before us involves the interpretation and application of Nevada constitutional and statutory provisions, which we review without deference to the district court’s decision.[4]
When interpreting a constitutional or statutory provision of plain and unambiguous language, we generally may not go beyond that language in construing the provision.[5] When the provision’s language is ambiguous, however, meaning that it can be reasonably construed in more than one manner, we may go beyond the language to adopt a construction that best reflects the intent behind the provision.[6]
Because this case specifically involves the interpretation of a tax exemption, we will strictly construe its meaning.[7] Still, as the Indiana Tax Court has noted, “[w]hen construing an exemption, the *164 court must always . . . avoid reading the exemption so narrowly [that] its application is defeated in cases rightly falling within its ambit.”[8]

Relevant sales and use tax provisions

Nevada imposes an excise tax, known as a sales tax, on the retail sale of tangible personal property in this state.[9] A retail sale occurs when personal property is sold for any purpose other than resale in the regular course of business.[10] Nevada also imposes a corresponding excise tax, known as a use tax, on the storage, use, or other consumption of tangible personal property in Nevada.[11] The use tax is complementary to the sales tax in that it guarantees that any nonexempt retail sales of personal property that have escaped sales tax liability are nonetheless taxed when the property is utilized in the state.[12]
The Nevada Constitution and several statutory provisions exempt certain retail sales from sales and use taxation. For example, the primary provision at issue here — Article 10, Section 3(A) of the Nevada Constitution — establishes a broad sales and use tax exemption with respect to “food for human consumption,” stating that “the legislature shall provide by law for . . . [t]he exemption of food for human consumption from any tax upon the sale, storage, use or consumption of tangible personal property.” Although Section 3(A) does not specifically define “food for human consumption,” it does specify that “[prepared food intended for immediate consumption” and “[a]lcoholic beverages” must be excluded from the exemption.[13]
In accordance with Article 10, Section 3(A), the Legislature enacted NRS 372.284, which provides,
1. There are exempted from the taxes imposed by this chapter the gross receipts from sales and the storage, use or other consumption of food for human consumption.
2. “Food for human consumption” does not include:
*165 (a) Alcoholic beverages.
(b) Pet foods.
(c) Tonics and vitamins.
(d) Prepared food intended for immediate consumption.[14]
Under Article 10, Section 3(A) and NRS 372.284, therefore, both the sale and the use of “food for human consumption” are exempt from taxation in Nevada.
Because the Tax Department relied upon Nevada’s use tax — not the sales tax — in collecting the taxes at issue here, the applicability of the use tax is the primary issue on appeal.[15] The Tax Department argues that regardless of Nevada’s constitutionally mandated food exemption, the use tax applied to the complimentary meals given away by the Nugget in this case because the Nugget’s use of its tax-exempt food to prepare such meals altered the food’s exempt status and changed it into taxable “prepared food intended for immediate consumption.” The Nugget counters that the taxes collected in this case were unconstitutional because the Nugget’s “use” of its tax-exempt food to prepare and distribute complimentary patron and employee meals did not constitute a taxable event under Nevada’s food exemption. For the following reasons, we agree with the Nugget.

Nevada use tax does not apply to the Nugget’s complimentary patron and employee meals

In Nevada, use tax liability is measured by the gross retail income received in an otherwise untaxed retail transaction, and it is imposed at the same rate as Nevada’s sales tax.[16] Thus, while Nevada’s use tax is imposed on the act of storing, using, or otherwise consuming tangible personal property in Nevada, it is triggered only after that property escapes Nevada sales tax liability and is used within the state.[17] For example, if a person were to pur *166 chase property in a state that has no sales tax and then bring that property into Nevada for storage, use, or other consumption, Nevada’s use tax would apply as a percentage of that property’s purchase price.[18] Use tax would apply in that instance because the initial out-of-state retail transaction escaped sales tax liability even though the transaction would have been subject to Nevada sales tax if it had occurred in this state.[19]
By contrast, here, the Nugget’s initial purchases of unprepared food did not “escape” sales tax liability since Nevada’s constitution exempts such purchases from sales and use taxation. Indeed, Nevada’s constitutionally mandated food exemption applies to all “food for human consumption,” unless that food is “prepared food intended for immediate consumption.’ ’[20] Because the food at issue in this case was not ‘ ‘prepared food intended for immediate consumption” at the time it was purchased by the Nugget, the Nugget’s initial purchase was exempt from sales taxation. Furthermore, the Nugget’s later “use” of that food to prepare complimentary meals was not subject to use taxation since the Nugget’s “use” did not follow an otherwise taxable purchase that had “escaped” sales tax liability.[21]
Other states have enacted similar food exemptions.[22] Only Indiana courts, however, have formally addressed whether their state’s food exemption extends to complimentary meals.[23] Specifically, in Horseshoe Hammond v. Department of State Revenue, the Indiana Tax Court concluded that complimentary meals were exempt from sales and use taxation under Indiana law.[24]
Horseshoe Hammond involved a fact pattern that is substantially similar to the one currently before us: a casino acquired food in a tax-exempt transaction and later prepared and gave away some of that food in the form of complimentary meals.[25] During the year at *167 issue, Indiana’s statutory food exemption stated that “sales of food for human consumption” were exempt from state sales and use tax.[26] In addition, like Nevada’s prepared food exception, the Indiana statute excluded certain prepared food intended for immediate consumption from the definition of exempt ‘ ‘food for human consumption.”[27]
Despite the taxability of prepared food intended for immediate consumption, the Horseshoe Hammond court concluded that both the casino’s initial “purchase of unprepared food items, and its subsequent use thereof, [were] exempt from tax” under the general food exemption.[28] In reaching this conclusion, the court noted that because the casino’s initial food purchases were sales and use tax exempt, the way in which the casino later used the items was “irrelevant” for purposes of applying the use tax.[29] Thus, the casino’s use of its tax-exempt food inventory did not lead to a taxable event under the state’s use tax provisions regardless of whether the casino used the food to prepare meals that were sold in its restaurants, given away, or thrown into the nearest trashcan.[30]
Like the Horseshoe Hammond court, we conclude that the Nugget’s complimentary patron and employee meals are use tax exempt in Nevada since the way in which the Nugget uses its tax exempt “food for human consumption” is irrelevant for purposes of applying the use tax.[31] Moreover, the Nugget never qualified as *168 a purchaser of “prepared food intended for immediate consumption” under the facts presented in this case. The Nugget merely purchased tax-exempt “food for human consumption,” and that food maintained its tax-exempt status until it was prepared and sold. Once the food was prepared and sold, Nevada sales tax was imposed on the purchaser of the “prepared food intended for immediate consumption.” However, at no point in this chain of transactions was the Nugget itself a purchaser of “prepared food intended for immediate consumption,” and nothing in the constitution’s language suggests that Article 10, Section 3(A)’s mandate stopped applying when the Nugget prepared and distributed its exempted food in the form of complimentary meals. Thus, no taxable event occurred under the facts presented here.
Nevada’s food exemption could have been written in a more limited fashion.[32] Instead, however, the constitution’s plain language clearly and broadly exempts all food for human consumption (unless that food is ‘ ‘prepared food intended for immediate consumption” at the time it is sold). Whether this exemption is the best approach is not for us to decide; we are bound to follow the constitution’s plain language even though a different result might be desirable in some circumstances.
Given the unambiguous constitutional mandate to maintain the tax-exempt status of “food for human consumption,” we conclude that Nevada’s food exemption applies to the Nugget’s use of the food in question to prepare and serve complimentary patron and employee meals.[33] For this reason, the Nugget is entitled to a refund of the use taxes paid on these meals, and the district court erred in granting the Tax Department summary judgment.

CONCLUSION

We conclude that, under the facts of this case, no taxable event occurred when the Nugget provided complimentary meals to its patrons and employees. Thus, the Nugget is owed a refund for use *169 tax paid on the complimentary meals in question, and we reverse the district court’s summary judgment denying the Nugget’s refund claim. We remand this matter to the district court for further proceedings with respect to the requested refund.

 While the general Sales and Use Tax Act is set forth in NRS Chapter 372, a similar tax is imposed under NRS Chapter 374. For purposes of simplicity, we will discuss only NRS Chapter 372. Our conclusions, however, also apply to all relevant provisions of NRS Chapter 374.

 Notably, the district court appeared to rely mainly on our decision in State, Tax Commission v. Nevada Cement Co., 117 Nev. 960, 960-70, 36 P.3d 418, 418-24 (2001), as its basis for rejecting the Nugget’s refund claim. In Nevada Cement, we concluded that the sale of factory equipment purchased for use in the production of cement was taxable as a “retail sale” under the “primary purpose” test and thus was not exempt from sales and use taxation under another exemption that applies to goods purchased solely for resale. Id. Unlike Nevada Cement, this case does not involve whether a particular sale qualified as a taxable “retail sale,” under Nevada’s “sale for resale” exemption. Instead, because the Nugget’s purchases of unprepared food were clearly not taxable under Nevada’s food exemption, the issue before us is whether the Nugget’s later use of that food (by preparing it and giving it away to patrons and employees free of charge) was taxable. For this reason, the Nugget’s “primary purpose” for obtaining the unprepared food is irrelevant to our resolution of this appeal, and our decision in Nevada Cement does not apply here.

 Wood v. Safeway, Inc., 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

 Walker v. Dist. Ct., 120 Nev. 815, 819, 101 P.3d 787, 790 (2004).

 Nevada Power Co. v. Public Serv. Comm’n, 102 Nev. 1, 4, 711 P.2d 867, 869 (1986); see Harvey v. Dist. Ct., 117 Nev. 754, 763, 32 P.3d 1263, 1269 (2001) (recognizing that “the rules of statutory construction apply when we interpret constitutional provisions”).

 Nevada Power, 102 Nev. at 4, 711 P.2d at 869.

 Shetakis Dist. v. State, Dept. Taxation, 108 Nev. 901, 907, 839 P.2d 1315, 1319 (1992); Sierra Pac. Power v. Department Taxation, 96 Nev. 295, 297, 607 P.2d 1147, 1148 (1980).

 Dawley, Inc. v. Indiana Dept. of State Revenue, 605 N.E.2d 1222, 1225 (Ind. T.C. 1992).

 NRS 372.105.

 NRS 372.050.

 NRS 372.185; see also NRS 372.190 (explaining that the user of purchased property is generally liable for the use tax).

 State, Dep’t Taxation v. Kelly-Ryan, Inc., 110 Nev. 276, 280, 871 P.2d 331, 334 (1994); see also NRS 372.345 (noting that use tax does not apply to property if sales tax was already collected with respect to that property’s sale).

 Nev. Const. art. 10, § 3(A)(2)(a) and (b).

 See also NRS 372.265 (recognizing that items prohibited from taxation under the Nevada Constitution are not taxable under NRS Chapter 372).

 Although the Tax Department has argued that Nevada sales tax could also apply to the complimentary meals at issue, sales tax can only apply when there has been a transfer of personal property “for a consideration,” which has not been demonstrated in this case. NRS 372.060; NRS 372.050(1); see NRS 372.105; Pink v. Busch, 100 Nev. 684, 688, 691 P.2d 456, 459 (1984); see also Horseshoe Hammond v. Dept. of State Revenue, 865 N.E.2d 725, 729 (Ind. T.C. 2007); Boardwalk Regency Corp. v. Director, Div. of Taxation, 18 N.J. Tax 328, 330 (Sup. Ct. App. Div. 1999). Still, we do not foreclose the possibility that complimentary meals such as the ones at issue in this case may be subject to sales tax where consideration is properly demonstrated.

 NRS 372.185; see NRS 372.105 (establishing rate of state sales tax).

 NRS 372.185.

 See id.

 Id.; but see NRS 372.320 (exempting “occasional sales” from Nevada sales and use taxes).

 Nev. Const. art. 10, § 3(A); NRS 372.284.

 State, Dep’t Taxation v. Kelly-Ryan, Inc., 110 Nev. 276, 280, 871 P.2d 331, 334 (1994); see also NRS 372.345 (noting that use tax does not apply to property if sales tax was already collected with respect to that property’s sale).

 E.g., Cal. Const. art. 13, § 34; Fla. Stat. Ann. § 212.08(1) (West 2005); Ind. Code § 6-2.5-5-20 (2007); R.I. Gen. Laws §§ 44-18-7(d)(1), 44-18-30(9) (2005); Tex. Tax Code Ann. § 151.314 (Vernon 2002).

 Horseshoe Hammond v. Dept. of State Revenue, 865 N.E.2d 725 (Ind. T.C. 2007); Hyatt Corp. v. Dept. of State Revenue, 695 N.E.2d 1051 (Ind. T.C. 1998).

 865 N.E.2d at 732.

 Id. at 730.

 Id. at 730-31.

 Id. at 731. Specifically, the Indiana statute excluded “food furnished, prepared, or served for consumption at a location, or on equipment, provided by the retail merchant” from that state’s food exemption. Ind. Code § 6-2.5-5-20(c)(8).

 Id. at 732 n.12 (emphasis added).

 Id.

 Id.

 The dissent contends that we have ignored the constitution’s plain language in reaching this conclusion. To the contrary, our conclusion is based solely on the constitution’s language and the nearly identical wording of NRS 372.284: no sales or use tax may be imposed on the “sales . . . storage, use, or other consumption of food for human consumption.” Moreover, this case is far more complex than the dissent suggests because it requires not only our interpretation of Nevada’s constitutional directive exempting food from use taxation, but also our understanding of the ever-elusive use tax’s application. Indeed, the dissent ignores the manner in which the use tax operates in an apparent attempt to reach a more desirable result. We cannot in good conscience follow that approach. See Nevadans for Nevada v. Beers, 122 Nev. 930, 948, 142 P.3d 339, 351 (2006) (explaining that “the Nevada Constitution is the organic and fundamental law of this state”). Finally, given the constitution’s plain meaning, well-established tenets of statutory construction preclude the dissent’s consideration of legislative intent. Nevada Power Co. v. Public Serv. Comm’n, 102 Nev. 1, 4, 711 P.2d 867, 869 (1986).

 Arizona, for example, limits its food exemption to sales of food for home consumption made by retail grocers or other similar businesses. Ariz. Rev. Stat. Ann. § 42-5101(3) (2006) (defining “food” as “any food item intended for human consumption which is intended for home consumption”); id. § 42-5102(A)(l) (exempting sales of food from “[a] retailer who conducts an eligible grocery business”); but see id. § 42-5351 (defining sales tax on jet fuel retail sales, as sales “for any purpose other than a sale for resale in the regular course of business”).

 NRS 372.185(2). By contrast, when the Nugget prepares and sells its exempted food, the sale of that food is subject to taxation because the food (as sold) is intended for immediate consumption. Nev. Const. art. 10, § 3(A). However, even in that scenario, the Nugget’s use of the food is exempt. See Horseshoe Hammond, 865 N.E.2d at 732 (concluding that provision of complimentary meals to business patrons is exempt from use taxation).